Reed *v.* Universal C.I.T. Credit Corporation, Appellant.

Argued March 18, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Vincent J. Grogan,* with him *Duff, Grogan & Doyle,* for appellant.

*Thomas H. Cauley,* with him *Richard D. Klaber* and *Charles E. Evans,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, April 23, 1969:

In October, 1956, appellee Chester L. Reed loaned John W. Skeels $20,000 in three separate installments; the loan was evidenced by a judgment note signed by Skeels and his wife. No payments on account of principal or interest were ever made by Skeels or his wife up to the time of the trial. On November 29, 1960 Reed entered judgment on the Skeels' note in the Common Pleas Court of Allegheny County. On the same date Reed caused a writ of execution to be issued, directing the sheriff to seize all of Skeels' goods at his place of business, a Chrysler, Imperial, Plymouth and Valiant dealership in Ingram, Pennsylvania.

Appellant UCIT filed goods claims in the execution asserting ownership of and a prior perfected security

interest in the Skeels' goods which had been levied upon by appellee Reed. The matter was interpleaded, but, prior to any decision, an additional levy was made on the same writ with the sheriff seizing another 38 automobiles. Meanwhile, discussions had commenced on November 29, 1960 between appellant and appellee. The legal effect of these conversations is one of the issues to be resolved on this appeal; what happened thereafter however is not in dispute. On December 23, 1960 appellee Reed stayed the writ of execution and released the cars to UCIT. At the same time Reed issued an attachment execution on his judgment against Skeels, and Doyle, the attorney for appellant, accepted service on behalf of UCIT.

The cars were sold by UCIT shortly thereafter, and when no funds were forthcoming from the sale for Reed, this action was brought on two different theories. The first count alleged that UCIT had promised in return for appellee's release of the cars to give Reed notice of the proposed sale of the Skeels' automobiles; that the UCIT attorneys had the authority to make such a promise; that no such notice was ever given; that Reed relied on this promise of notice to his detriment; and that UCIT is liable to Reed for damages because he was unable to protect his own interests at the sale.

The second count asserted that the conversations between Reed and the UCIT lawyers plus the documents which were completed during the period between November 29, 1960 and December 23, 1960 represent a security agreement under the Uniform Commercial Code; that the UCIT attorneys had the authority to enter into such an agreement; that as a secured party under the UCC, Reed was entitled to notice; that UCIT was under an obligation to dispose of the collateral in a commercially reasonable manner; and that

failure of UCIT to either send Reed the required notice and/or sell the cars in a commercially reasonable manner resulted in damages to Reed.

The jury returned a verdict in favor of Reed in the amount of $28,400, which included both principal and interest. Since it is our view that this verdict is entirely supported by the theory outlined in appellee's first count and the evidence presented below, we need only consider appellant's contentions as to that theory of recovery; in so doing, we in no way decide any of the issues which were argued as to appellee's theory of recovery under the Uniform Commercial Code.

The initial contention appellant asserts to defeat recovery under appellee's first count is that local counsel lacked the authority, either apparent or real, to bind UCIT to such a promise. However, it is not necessary under the facts of this case for this Court to reach the issue of the authority of local counsel. The court below concluded that there was ample evidence to support a finding that "agreement was reached and arrangements were made in the presence of, and with the tacit approval of Andrew Newall, Esq. of defendant's home office." We must agree with the trial judge that even assuming that local counsel only had the "authority to make agreements on behalf of his client with respect to procedural matters," see *Philadelphia v. Schofield*, 375 Pa. 554, 101 A. 2d 625 (1954), home office staff counsel must occupy a relationship which is different from that of local counsel and which comprehends an authority which is broad enough to permit this type of agreement. Further, it seems patently unfair for appellant to contend that its attorney did not have the requisite authority to make promises on behalf of UCIT when these same individuals obviously had sufficient authority to accept the benefits arising from appellee's part of the bargain.

Local counsel enthusiastically gained possession of the automobiles and initiated the disposition process and in so doing ratified the agreement for UCIT.

Next appellant contends that the promises made by UCIT's agents could not constitute an enforceable legal agreement. However, we need not decide whether there was in fact an enforceable agreement between the parties that UCIT would make appellee whole after the sale of the collateral. All appellee had to prove was the existence of a promise by UCIT to notify him before UCIT disposed of the automobiles. For this proposition there was more than enough evidence in the record from which the jury could have concluded that such a promise was made. Since appellee proved that he reasonably relied on the promise, it alone was sufficient to create a legal obligation on UCIT, the breach of which would establish a cause of action.

Conceding that such notice of sale was never given to appellee, appellant also argues that appellee cannot complain because the sale was carried on in a commercially reasonable manner. Although, under our view of the case we need not decide whether this sale had to comply with the terms of the Uniform Commercial Code, see §9-504(3), appellant's reasoning appears to be that if the sale *was* commercially reasonable appellee was entitled to no damages despite the lack of notice (presumably because even if appellee had been there the best he could have guaranteed was a commercially reasonable sale). The trial court concluded that "They [the jury] resolved the question [of the reasonableness of the sale] against the defendant. We see no reason to disturb that finding." Nor do we. There is ample evidence that the sale was consummated in an especially short period of time (the first business day after Christmas), without any advertising or attempt to conduct a public sale, and that the result-

ing price was considerably lower than might have been expected. All of these factors go to the question of commercial reasonableness and from them the jury could have concluded that this sale was commercially unreasonable.

Finally, appellant urges that appellee failed to establish any loss to him by virtue of the failure to give notice. The appellant's argument is based on the proposition that, accepting appellee's evidence as to the value of the collateral as correct, if this amount had been obtained from the sale, it would have been insufficient to reimburse all of appellant's claims, let alone leave anything for appellee. In other words, appellant is saying that if anyone was hurt by the manner in which the sale was conducted, it was appellant. However, what appellant really does is perform some mathematical sleight-of-hand, a practice which this Court must view with considerable circumspection. In fact, appellant does not state either crucial figure, the value of the collateral or the amount owed by Skeels to appellant, in the best light for appellee. This *must* be done, if appellant is to succeed in convincing an appellate court that it is entitled to a reversal. This Court does not sit as a trier of issues of fact, expecting to be persuaded that one or the other side is more credible. That is only a task for a trial court and we would never invade that area of the judicial process.

Appellant alleges that appellee's best evidence would establish that the cars were worth $134,900 and the debts due appellant amounted to over $138,000. But in fact there was evidence in the record to support a finding by the jury that the automobiles were worth $152,000 and that Skeels' obligations to UCIT amounted to around $50,000. If the jury accepted these figures, they could have concluded that if the sale had been carried on in a commercially reasonable manner there

would have been more than $100,000 from which appellee could have recovered. Thus appellant's argument is totally without merit as to the fact that appellee suffered no loss due to the lack of notice.

Appellant presses three additional claims in its quest for a reversal. The first involves the trial judge allowing Reed to prove that Skeels had subsequently satisfied his debts to UCIT. Appellant argues that such proof was irrelevant and prejudicial. However in the context in which this was introduced to rebut appellant's allegations concerning the amount of the debt due to it from Skeels, it seems entirely relevant and appropriate. Otherwise, the jury might have been misled on the issue of appellee's "loss" by overestimating the amount due from Skeels to UCIT. Second, appellant claims the jury should have been charged that appellee had a duty to mitigate damages by proceeding directly against Skeels on the judgment note. In light of the fact that appellee had a right against appellant which arose from the promise to give notice and was independent of his dealings with Skeels, we must conclude that this argument is especially unpersuasive. Reed had a promise from UCIT; UCIT cannot circumvent this obligation by pointing a finger at a third party, even if the third party was the original debtor.

Finally, appellant cites errors in the charge, either failure to approve appellant's points for charge or actually instructing in accordance with appellee's request. All of these issues have been discussed in earlier parts of the opinion and need not be repeated here. Suffice it to say that this Court is convinced there was evidence presented in the court below sufficient to support findings that appellee had been promised he would be given notice of the proposed sale by UCIT; that he relied on this promise; that no notice was forthcoming; that if appellee had received notice he could have at-

tended the sale and protected his interests; that the sale was conducted in a commercially unreasonable manner; and that if it had been conducted properly there would have been sufficient proceeds to satisfy the debts of both UCIT and appellee.

Therefore, the judgment of the court below is affirmed.

Mr. Justice POMEROY took no part in the consideration or decision of this case.