389 A.2d 94
**In the Matter of the ADOPTION OF CHRISTOPHER P.**

**Appeal of CATHY P.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1977.

Decided July 19, 1978.

Reargument Denied Aug. 21, 1978.

Nancy E. Rourke, Harrisburg, Alan Linder, Lancaster, for appellant.

Leon P. Haller, Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

OPINION OF THE COURT

ROBERTS, Justice.

The Orphans' Court Division of the Court of Common Pleas of Dauphin County denied appellant's petition to vacate a final decree of adoption entered September 3, 1976. In this appeal, appellant alleges there is insufficient evidence to support the finding that her consent to adoption was knowing, voluntary and deliberate, and asserts the statutory procedure followed by the orphans' court denied her due process and equal protection guaranteed by the Pennsylvania and United States Constitutions. Because the first claim is without merit and the second claim is not properly preserved for appellate review, we affirm.[1]

Appellant Cathy P. is the natural mother of Christopher P., born to appellant and her husband Anthony P. on September 17, 1973. Appellees the adoptive parents of Christopher pursuant to the final adoption decree, are the paternal grandparents of the child. Around the middle of July, 1976, appellant executed a Consent to Adoption appellees presented to her. The natural father signed a similar consent, which is not here challenged. The Consent signed by appellant states, in relevant part:

> "2. That [Cathy P.] has been fully informed that [appellees] intend to and are about to present to the Court the Petition to which this [Consent] is attached, asking for the adoption of Christopher [P.];

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1978).

3. That [Cathy P.] hereby consents to the said adoption and voluntarily executes this Consent with the full knowledge of the legal effect of this Consent and of said adoption;

4. That she further states that she has not been paid or promised any payment or expects to receive any payment for executing this Consent, but executes this Consent by her own free will and without any undue influence or coercion and she further states that she is of the opinion that said adoption will promote the welfare of Christopher . . . ;

. . . . .

6. That she hereby waives notice of the presentation of the Petition for said adoption and notice of the hearing thereon by the Court, and further that she respectfully requests your Honorable Court to excuse her from attending any and all hearings thereon."

The uncontested facts established at the hearing reveal that appellant was sixteen at the time of the child's birth and nineteen at the time of separation from her husband, the natural father. Appellant and the natural father married shortly before the birth of Christopher and, during the three years of their marriage, lived either with appellees or next door in a home owned by appellees. Appellant and the paternal grandmother shared care and control of the child, though the extent of participation by each is disputed. The child spent many nights in appellees' home after his parents moved next door and had his own room there.

In late June, 1976, appellant left the natural father due to marital difficulties. The child remained with appellees. In mid-July, 1976, appellant signed the Consent to Adoption. She continued to have some contact with the child over the summer and early fall 1976. In mid-August, 1976, the paternal grandmother took Christopher to Canada for two weeks, returning for the adoption hearing on August 31, 1976. In accordance with her signed Consent to Adoption, appellant received no notice of the hearing and did not attend. The orphans' court entered a decree of adoption on

September 3, 1976. On September 22, 1976, appellant filed a Petition for Writ of Habeas Corpus for custody of the child.[2] Since September 30, 1976, the paternal grandmother has not permitted appellant to have any contact with Christopher. On October 19, 1976, appellant filed a Petition for Rule to Show Cause Why Decree of Adoption Should Not Be Vacated. The orphans' court held a hearing on the Petition to Vacate on December 2, 1976, after which it discharged the Rule. This appeal followed.

Appellant first claims the orphans' court erred in finding that she knowingly and voluntarily consented to adoption of her child by appellees. Under section 411 of the Adoption Act of July 24, 1970, P.L. 620, No. 208, art. I, §§ 101 et seq., 1 P.S. §§ 101 et seq. (Supp.1977), the consent of a natural parent whose parental rights have not already been terminated is necessary to effect an adoption. *Singer Adoption Case,* 457 Pa. 518, 523, 326 A.2d 275, 277–78 (1974). This consent to an adoption must be intelligent, voluntary and deliberate. *Singer Adoption Case,* supra; *Susko Adoption Case,* 363 Pa. 78, 83, 69 A.2d 132, 135 (1949). Moreover, the consent must be clear and unequivocal. *Singer Adoption Case,* supra. Because of the need to accord finality to established adoption relationships, a court will not vacate an adoption decree unless the person attacking the decree proves its invalidity by clear and convincing evidence. *Singer Adoption Case,* supra; *Chambers Appeal,* 452 Pa. 149, 305 A.2d 360 (1973); *List Adoption Case,* 418 Pa. 503, 211 A.2d 870 (1965). As the Supreme Court of Rhode Island has stated:

> "A liberal attitude towards revocation of consent by a natural parent after entry of an adoption decree can engender a sense of insecurity on the part of the adoptive parents which in turn can have severe psychological repercussions on the one whose interest falls to the protection of the court, that is, the child. An adoption proceeding is a tripartite affair. There are three parties concerned with

2. According to appellant, this matter has been continued generally pending outcome of her Petition to Vacate the decree of adoption.

each adoption petition: the natural parents, the adoptive parents and the child. We think that the physical welfare and emotional stability of all three require that there be some assurance as to the finality of an adoption decree. It is especially important that persons who adopt minor children may rely on the decree as some guarantee that, in addition to the child, they are not also adopting at some future time litigation whose goal is to extinguish the parent-child relationship and force the adoptive parents to relinquish the child upon whom they have showered care and affection. The natural parent should be saved the stress and strain involved in futile attempts to regain custody of the child. The one seeking to annul an adoption decree should carry a heavy burden."

*In re Adoption of Minor Child,* 109 R.I. 443, 450, 287 A.2d 115, 119 (1976).

This Court has long been aware of this need to accord finality to statutorily created and judicially decreed adoptive relationships. Particularly where, as here, an appellant seeks to vacate a facially valid, final adoption decree, we have noted the substantial burden of proof which must be met to "justify disturbing the integrity of that decree." *Chambers Appeal,* 452 Pa. at 153, 305 A.2d at 362. In *Chambers Appeal,* supra, a natural mother appealed from dismissal of her petition to vacate a final adoption decree filed nine months after entry of the decree of adoption. In rejecting the natural mother's attempt to withdraw her consent, we stated:

"The natural mother's attempt to withdraw her consent came much too late. Many important rights and relationships involving the child and the adoptive parents had been conclusively created and permanently established.

. . . . .

As this Court has previously said: '. . . a decree of adoption *terminates forever all relations between the child and its natural parents,* severs it entirely from its own family tree and engrafts it upon that of its new parentage: *Schwab Adoption Case,* 355 Pa. 534, 536, 50 A.2d

504, 505.' (Emphasis added.) *List Adoption Case,* supra 418 Pa. at 516, 211 A.2d at 877; *Harvey Adoption Case,* supra 375 Pa. at 3–4, 99 A.2d at 277–78. Moreover, this statutorily created and judicially decreed relationship between adoptive parents and the child must be given 'such *finality* as will abolish the fear that in the years ahead something will occur to extinguish the parent-child status and force [the adoptive parents] to relinquish the children they have adopted and upon whom they have lavished care and affection.' *List,* supra 418 Pa. at 517, 211 A.2d at 877.

Clearly, this wise, necessary and justified 'finality' of all adoption decrees, statutorily and judicially mandated, precludes appellant at this late date from imperiling and jeopardizing the adjudication of adoption. Our adoption statute, the controlling decisions of this Court, and the happiness and well-being of this child-parent relationship require us to conclude as the orphans' court division correctly did, that the family relationship so established is *final* and conclusive and may not be disturbed."

Id. 452 Pa. at 154–55, 305 A.2d at 363. (footnote omitted). Similarly, we must here conclude appellant has not met her "substantial burden of proving the adoption decree's invalidity that would justify disturbing the integrity of that decree."

The scope of appellate review on a petition to vacate is limited to determining whether the orphans' court's findings are supported by competent evidence, *Adoption of M.T.T.,* 467 Pa. 88, 354 A.2d 564 (1976); *Sheaffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973); *Susko Adoption Case,* supra, or whether the court abused its discretion or committed an error of law. *In re William L.,* 477 Pa. 322, 383 A.2d 1228 (1978).

The testimony here reveals two opposite versions concerning appellant's signing of the Consent to Adoption. The orphans' court, based upon evidence which it believed reliable, found that appellant had signed the Consent know-

ingly and voluntarily. As this Court noted in *Reed v. Univ. C.I.T. Credit Corp.*, 434 Pa. 212, 217, 253 A.2d 101, 104 (1969), "[We do] not sit as a trier of issues of fact, expecting to be persuaded that one or the other side is more credible. That is only a task for a trial court and we would never invade that area of the judicial process." Accordingly, findings of the orphans' court supported by evidence of record are entitled to the same weight given a jury verdict and must be sustained unless the court abused its discretion or committed an error of law. *In re William L.*, supra. The orphans' court's finding that appellant signed the Consent knowingly and voluntarily is supported by competent evidence and therefore must be affirmed since appellant has proved no abuse of discretion or error of law.

The testimony of the paternal grandmother indicates that on several occasions she discussed the subject of adoption with appellant. In July, 1976, appellant came to appellees' home where she read the Consent and signed it saying, "Yes, this is the best thing for Christopher." The paternal grandmother's testimony is supported by that of her husband, her housekeeper and her housekeeper's daughter, all of whom saw appellant sign the Consent and heard her make the above statement. Thus, there is competent evidence that appellant read and signed the Consent with the understanding that her child would be adopted by appellees.

Appellant asserts that even if her version of the signing of the Consent is rejected, this Court must still find that the signing was not voluntary, intelligent and deliberate. Appellant argues that appellees admit appellant did not see the Consent until the day she signed it and received no counseling from an attorney or other officer of the court concerning the nature of the adoption proceeding, its effect on her parental rights, her right to revoke, or the effect of the waiver of notice. While appellant's reading of the record may be factually accurate, her conclusion is not warranted.

Appellant cites no authority for the proposition that assistance of counsel is required before parental rights may be voluntarily terminated. To the contrary, in *Watson*

*Appeal,* 450 Pa. 579, 301 A.2d 861 (1973), this Court held that a natural mother who voluntarily relinquishes her parental rights cannot later complain that she was entitled to have counsel appointed to assist her at the voluntary relinquishment proceeding. See *In re Adoption of R. I.,* 455 Pa. 29, 32, 312 A.2d 601, 602 (1973). Similarly, we are not here persuaded that appellant's signing of the Consent to Adoption without the advice of counsel as a matter of law renders her consent unknowing, involuntary or not deliberate. See *In re Adoption of Hoffman,* 61 Ill.2d 569, 338 N.E.2d 862 (1975), cert. denied, 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 202 (1976) ("While it may be desirable for the natural parents of a child to have legal counsel prior to consenting to the adoption of the child, we do not find it to be constitutionally required . . . ."); accord, *Interest of Kerwood,* 44 Ill. App.3d 1040, 3 Ill.Dec. 773, 359 N.E.2d 183 (1976); *Golz v. Children's Bureau of New Orleans, Inc.,* 326 So.2d 865 (La.), appeal dismissed for want of a substantial federal question, 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976).

Appellant next argues that her Consent to Adoption is invalid because a notary did not witness her signature.[3] However, as appellant admits, the Adoption Act does not require that a Consent be notarized to be effective. See sections 401–14 of the Adoption Act; Sup.Ct.O.C. Rule 15.-2(b)(3). Appellant signed a written Consent and four witnesses testified under oath that they saw her sign it. That fact alone is sufficient under the Act to constitute a valid execution of the consent.

Likewise, we must reject appellant's contention that the orphans' court erred in finding that she did not revoke her consent before entry of the final adoption decree. To support her argument, appellant testified that she asked the paternal grandmother to return Christopher to her custody after signing the Consent but before entry of the decree of

3. While appellant's written consent contained a Notary's acknowledgment when presented to the court, it is undisputed that this acknowledgment was affixed after appellant signed the Consent at a time when she was not present.

adoption. Appellant and her witnesses also testified that they drove by appellees' home when the paternal grandmother and Christopher were in Canada. At best, appellant's argument suggests that she might have attempted to regain custody of her child had he been home during this period. The trier of fact was free to disbelieve this testimony. *Kay v. Kay,* 460 Pa. 680, 334 A.2d 585 (1975). That appellant filed a Writ of Habeas Corpus on September 22, 1976, is of no consequence since the decree of adoption had already been entered on September 3, 1976.

Thus, appellant's testimony concerning her subjective desire during the summer of 1976 to regain custody is insufficient to establish that the orphans' court erred in holding that "[t]here is nothing in this record to indicate this Consent was ever effectively withdrawn." The court's finding is supported by competent evidence. The cases relied upon by appellant are factually inapposite. In *In re Fritz,* 460 Pa. 265, 333 A.2d 466 (1975); *Sheaffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973); and *Hunter Adoption Case,* 421 Pa. 287, 218 A.2d 764 (1966), the natural mothers, unlike appellant, clearly manifested intentions to halt voluntary termination proceedings before entry of final decrees of termination.

We also find no merit in appellant's contention that the orphans' court's failure to afford her notice of the adoption hearing and inquire into the circumstances of the Consent constitutes an abuse of discretion. Section 421 of the Adoption Act provides that notice of hearing on a petition for adoption "shall be given to all persons whose required consent has not been obtained and to such other persons as the court shall direct." Similarly, section 423 of the Adoption Act states that "the court *may* require the appearance and testimony of all persons or agencies whose consent is required . . . ." (emphasis added.) Clearly, the court here did not abuse its discretion in dispensing with appellant's presence at the hearing since her written consent to the adoption, including waiver of her right to receive notice of the adoption hearing, was attached to the petition for adoption. See *List Adoption Case,* supra, citing

*Adoption of Thomas J. Coyle,* 48 Montg. 223 (1932) and *Adoption of Lorraine Blahut,* 22 Lehigh L.J. 272 (1946).

As we stated in *List:*

> "In the case at bar, the natural mother not only consented to the adoption but waived her right to be present at the hearing. Under such circumstances the court had every right to rely on her waiver and dispense with her presence at the hearing and absence from the hearing of the natural mother in no manner vitiates this decree or justifies its vacation."

Id. 418 Pa. at 514, 211 A.2d at 876.

Finally, appellant contends that the statutory procedure followed by the orphans' court denied her due process and equal protection guaranteed by the Pennsylvania and United States Constitutions. We do not reach the merits of this claim, however, for appellant neither raised the constitutional issues in the orphans' court nor notified the Attorney General of her constitutional challenge to the Adoption Act, as prescribed by Pa.R.Civ.P. 235 and Pa.R.A.P. 521. "Matters not raised in, or considered by, the court below cannot be invoked on appeal even though they involve constitutional questions." *Montgomery County Bar Association v. Rinalducci,* 329 Pa. 296, 298, 197 A. 924, 925 (1938); see *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975); *Altman v. Ryan,* 435 Pa. 401, 257 A.2d 583 (1969); *Irrera v. Southeastern Pennsylvania Transp. Auth.,* 231 Pa.Super. 508, 331 A.2d 705 (1974).

Decree affirmed. Each party pay own costs.

EAGEN, C. J., did not participate in the consideration or decision of this case.

PACKEL, Former J., did not participate in the decision of this case.

NIX, J., concurs in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The majority acknowledges that the consent of a natural mother to the adoption of her child must be *intelligent, voluntary* and *deliberate.* The majority also acknowledges that the consent must be *clear* and *unequivocal.* The majority, however, fails to apply the very standards it enunciates.

The appellant, natural mother in this case, does not dispute that she signed a consent to adoption form less than two months before the final adoption decree, in the home of the natural paternal grandparents of the adoptee. She contends, however, that she was not informed of the consequences of that consent. Perhaps the most serious consequence of an adoption is the termination of parental rights which, among other things, takes away forever the natural parent's right to see the child.

The record in this case is completely barren of any evidence that the natural mother knew or was informed by anyone that she was giving up her right to ever see her child. There is no testimony that anyone ever told her this. The trial court made no finding of fact as to whether the natural mother knew the consequences of her consent to adopt. Indeed, the trial court made no findings of fact whatsoever in this case. Under these circumstances, how can it be said that the consent was a knowing and intelligent consent?

In other areas we have refused to accept the signing of a form alone as evidence indicating a knowing and intelligent signing. For example, we have held that a signed guilty plea is not knowing and intelligent if the person signing did not know the consequences of the signing. We have held that consents in open court, waiving a jury trial or waiving any trial, are not knowing and intelligent consents unless it is clear that the accused knows the consequences of what he is doing. In many areas of the law a signature is meaningless unless it is established that the person knew the consequences of the act.

In this case, the majority completely ignores the grave responsibility that the judicial branch has to insure that the giving up of a child is a knowing and intelligent act and that the parent is fully informed of the consequences of that act.

In nonfamily adoptions, where a child is to be adopted by persons not known to the natural parent, an inference may be drawn from the signing of a consent to adoption that the person signing must have known that the consequence of the adoption would be that the consenting parent would lose the right to ever see the child again. Such an inference, however, is totally unwarranted in a family adoption situation such as we have before us. In the absence of evidence that the consenting parent knew that the adoption would cut off the right to ever see the child again, there is no reasonable basis for inferring that the natural parent had knowledge of such consequences. In this case, since the child had been cared for and lived with the paternal grandparents most of the time, it may be reasonable to conclude that the natural mother considered that it would be in the best interests of her son that he be adopted by his grandparents. This is completely different from concluding that she knew that the grandparents would then have the right to stop her from ever seeing her child again.

Moreover, in this case, there is no doubt that the appellant's waiver of her right to notice of the adoption proceeding cannot stand in the absence of any evidence indicating that the appellant knew that the consequences of her waiver of notice right would be a decree forever cutting her off from her child.

The majority overlooks and does not discuss the significant issue raised in this case. The issue is whether a signed consent to adoption is valid in the complete absence of evidence that the person knew that the legal consequences of the adoption would be to completely cut off the parent's right to ever see the child again. The law should not be more solicitous when other rights are being waived than it is when a child is being taken from a parent forever.

This matter should be remanded to the trial court for a hearing to determine if the appellant knew the consequences of signing the consent form. If she did not, the adoption decree should be vacated.