401 A.2d 341

**In re ADOPTION OF R. H., a minor.**

**Appeal of C. M. H. (Two cases)**

**In re ADOPTION OF D. H., a minor.**

Supreme Court of Pennsylvania.

Argued March 5, 1979.

Decided May 1, 1979.

Louis P. Vitti, Pittsburgh, for appellant.

Dina G. McIntyre, McIntyre & McIntyre, Pittsburgh, for Raymond and Mary Lou Gruseck.

John H. Auld, II, Howard S. Auld & Assoc., Allison Park, for Charles E. Wittmer, et ux.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Since February, 1977, Mr. and Mrs. G. have raised D.H., now age five, and Mr. and Mrs. W. have raised R.H., now four. Each couple has filed in the Orphans' Court Division of the Court of Common Pleas of Allegheny County a petition to adopt the child in its custody for the past two years. In October, 1977, at the time hearings on the petitions to adopt were scheduled to begin, appellant, the natural mother of the proposed adoptees, filed petitions to vacate decrees entered in May, 1977 terminating her parental rights. Appellees, the Gs and the Ws, opposed the petitions. After evidentiary hearings, the orphans' court dismissed appellant's petitions to vacate. On these appeals, appellant argues that the evidence in support of her petitions is "uncontroverted" and that the orphans' court was required to grant relief. Our review satisfies us that appellant's claim is without merit and we affirm.

## I

D.H. was born in July, 1973 and R.H. was born in September of the following year. Appellant, now 22, and her former husband, the natural father of both children, separated shortly after R.'s birth. For over two years, neither appellant nor her former husband lived with or took care of the children. Instead, both children were raised by appellant's mother. Appellant's mother experienced difficulty raising the children, the Gs and the Ws expressed interest in adopting the children and, in February, 1977, appellant's mother, with appellant's knowledge, placed the children with appellees. Since placement, each couple has filed a report of intention to adopt under Section 331 of the Adoption Act of 1970.[1]

In April, 1977, the Gs petitioned the orphans' court, under Section 311(1) of the Act,[2] for a decree involuntarily terminating both natural parents' rights to D.H. There is no dispute that appellant and the natural father were served with notice of the proceedings.[3] The natural father appeared at the hearing but appellant did not, and neither parent contested termination. Appellant's mother testified on behalf of the Gs. The orphans' court on May 3, 1977 entered the requested decree. No appeal was taken. The Gs, in accordance with Section 401 of the Act, subsequently filed their petition to adopt D.H.

1. Act of July 24, 1970, P.L. 620, 1 P.S. § 331 (Supp.1978).

2. Section 311(1), 1 P.S. § 311(1), provides:
 "The rights of a parent in regard to a child may be terminated after a petition pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:
 (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . . ."

3. An officer testified that he served appellant one month before the scheduled hearing. Appellant claimed at the hearing on her petitions to vacate that she could not remember service. The orphans' court found service was made and appellant does not now dispute this finding.
 The natural father is not a party to these proceedings.

On May 5, two days after the orphans' court entered its decree terminating appellant's rights to D.H., appellant filed a petition under section 302 of the Act for voluntary relinquishment of her parental rights to the other child, R.H. The orphans' court held a hearing and engaged appellant in a colloquy to determine appellant's understanding of the petition. Appellant acknowledged to the court that she was asking for termination of all of her parental rights to R.H., and that she made the request "of [her] own free will and accord," without "pressure," and "voluntarily." On May 25, 1977, the court entered a decree of termination granting appellant's petition for voluntary relinquishment and awarding custody of R.H. to the Ws. This decree also was not appealed. The Ws then filed their petition to adopt R.H., and included a request to terminate the parental rights of appellant's former husband under section 311(1).

In October, 1977, five months after the orphans' court entered its decrees of terminations, appellant filed her petitions to vacate the May decrees. Both petitions allege that appellant's physical and mental condition made her susceptible to the influence of her mother, that her testimony at the proceedings was not "true and correct," and that she could not understand either the uncontested termination proceedings in which her rights to D.H. were terminated or the proceedings in which she voluntarily relinquished her rights to R.H. The same court which conducted the voluntary relinquishment proceedings held several hearings on the petitions. Appellant, appellant's mother, and a psychologist testified in support of appellant's allegations. The court concluded that appellant "changed her mind" and dismissed the petitions. The orphans' court en banc unanimously dismissed appellant's exceptions and these appeals followed.[4]

## II

Appellant contends that the evidence in support of her petitions to vacate obliged the orphans' court to grant relief.

4. Hearings on the Gs' and the Ws' petitions to adopt, scheduled to begin eighteen months ago, were postponed when appellant filed her petitions to vacate and have not been held.

She now claims that the evidence establishes that her "ability to exercise independent judgment was vitiated." Appellant states that her mother "distort[ed] all of the information . . . in order to promote the adoption and relieve herself of the problems of caring for [appellant] and [appellant's] children." Her mother's total dominance was, according to appellant, "clearly stated by the psychologist and is apparent throughout the record."

Appellant and the natural father had notice of the proceedings which led to termination of their parental rights to D.H., only the father appeared at the hearing, and neither natural parent contested termination. Moreover, appellant initiated and participated in the voluntary relinquishment proceedings leading to termination of her rights to R.H. Both decrees are final and, unless appellant first establishes her claim that she was subject to her mother's influence, she cannot obtain equitable relief. See e. g., *Chambers Appeal*, 452 Pa. 149, 305 A.2d 360 (1973); Restatement (Second) of Judgments Ch. 5, Intro. note (Tent. Draft No. 6, February 10, 1979).[5]

■ Appellant filed her petitions to vacate in October, 1977, at the time hearings on the prospective parents' petitions to adopt were to begin, and five months after the orphans' court entered its decrees of termination. Prospective parents who have, as here, initiated petitions to adopt, after natural parents have failed to appeal decrees of termination, are fully justified in relying upon the finality of the decrees. Upon entry of a final decree of termination, the prospective parent "shall stand in loco parentis to the child

**5.** Appellant may not, after the decrees of termination have become final, utilize her petitions to vacate merely to relitigate the propriety of termination. Under Section 321 of the Adoption Act of 1970, entry of a final decree of termination marks the end of a natural parent's involvement in adoption proceedings. Section 321 provides that "[a] decree terminating all rights of a parent or a decree terminating all rights and duties of a parent entered by a court of competent jurisdiction shall extinguish the power or the right of such parent to object to or receive notice of adoption proceedings." No provision of the Adoption Act authorizes relitigation of the issues addressed in termination proceedings.

and in such capacity shall have the authority, inter alia, to consent to marriage, to enlistment in the armed forces and to major medical, psychiatric and surgical treatment, and to exercise such other authority concerning the child as a natural parent could exercise." Adoption Act of 1970, § 321. See also id., § 501 (decree of adoption generally may not be entered unless adoptee has resided "for at least six months" with party seeking to adopt); Restatement (Second) of Judgments, supra at § 122 Comment f.[6]

The orphans' court heard testimony that appellant was under stress and, in the view of a psychologist, would have in the alleged circumstances been likely to turn to "someone she is closely involved with." But the court also heard testimony that, during the period appellant claimed she was subject to her mother's influence and unable to exercise independent judgment, appellant was employed, was in good health, lived apart from her mother, procured a divorce, and did not submit to her mother's requests to care for the children. The orphans' court also had before it the transcript of the colloquy in which the same court, in May, 1977, heard appellant request voluntary relinquishment of her parental rights to R.H. "of [her] own free will and accord," without "pressure," and "voluntarily."

It is established that "in reviewing the decision of the orphans' court, our task is to assure that the record is free from legal error and to determine if the chancellor's findings are supported by competent and adequate evidence, and are not predicated upon capricious disbelief of competent and credible evidence." *Cohen Will*, 445 Pa. 549, 550, 284 A.2d 754, 755 (1971). Accord, *P. Adoption*, 480 Pa. 79, 389 A.2d 94 (1978). In its capacity as finder of fact, the orphans' court

6. Comment f to Restatement (Second) § 122 observes:
 "A judgment determining interests in property or status or establishing rights and obligations concerning future conduct . . . is usually a base of reference for specific future plans and acts by the parties. In proportion as the plans and acts in reliance on the judgment are substantial in moment and prolonged in duration, they become considerations that ought to give stability to the judgment."

found, based upon evidence it believed to be reliable and credible, that the evidence offered in support of appellant's petitions to vacate the final decrees of termination did not establish appellant's claim, but instead demonstrated only that five months after entry of the final decrees appellant "changed her mind." We must conclude, as did the Orphans' Court Division, that appellant has not met her substantial burden of proving the invalidity of the challenged decrees. As *Reed v. Universal C.I.T. Credit Corp.*, 434 Pa. 212, 217, 253 A.2d 101, 104 (1969), stated, "[t]his Court does not sit as a trier of issues of fact, expecting to be persuaded that one or the other side is more credible. That is only a task for a trial court and we would never invade that area of the judicial process." There is on this record no basis for disturbing the integrity of the May, 1977 decrees of termination.

Decrees affirmed. Each party pay own costs.

LARSEN, J., concurs in the result.