## Singer Adoption Case.

Argued April 16, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Robert F. Ruehl,* with him *Power, Bowen & Valimont,* for appellants.

*Ralf E. Gilbert,* with him *Curtin and Heefner,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

Alissa Lynn Singer, the subject of this appeal, was born on February 22, 1968, to Frederick J. Singer, III, and Shirley A. Singer. The natural parents were divorced in Mercer County, New Jersey, on March 1, 1971. The divorce decree incorporated an earlier separation agreement which provided, *inter alia,* for custody of the child to remain with the mother, for support to be paid by the father, and for weekly visitation rights by the father.

On June 26, 1971, Shirley A. Singer married Thomas M. Forbes in New Jersey and thereafter took up residence in Bucks County, Pennsylvania. Singer continued to pay support for the child to the Forbes and also to exercise his visitation rights on a regular basis. On December 2, 1971, Singer and Mrs. Forbes executed an agreement modifying the earlier separation agreement in certain particulars, including a reduction in the amount of the agreed support payments for Alissa, the deletion of provisions that if the mother ceased to have custody then custody would vest wholly and exclusively in the father, and the substitution of these deleted provisions with the father's consent to the

adoption of his daughter by the Forbes. The modification agreement also provided that Singer's support payments would continue after the proposed adoption and that Singer's visitation rights would not only continue similarly but would also be extended to include vacation visitations. On December 13, 1971, a New Jersey court incorporated this modification agreement as an amendment to the earlier divorce decree.

The Forbes filed an adoption petition on August 4, 1972, with the Orphans' Court Division of the Court of Common Pleas of Bucks County and attached thereto Singer's consent form which was conditioned upon the preservation of his rights with respect to the child under the New Jersey divorce decree. After holding a hearing attended only by the Forbes, their counsel and the child, the court refused to enter a decree of adoption because Singer's consent was not unconditional and because he was not notified of the hearing. The Forbes were informed that Singer's unconditional consent was necessary to obtain the adoption decree.

On September 11, 1972, the court received a new and unconditional form of consent signed by Singer and dated September 3, 1972. A letter dated September 6, 1972, to the court and signed by Mr. Forbes explaining the circumstances under which Singer had signed the new consent form accompanied this consent form. The letter stated:

". . . Both my wife, Shirley, and I explained to Mr. Singer that the signing of this new Consent Form waived any rights he might have under the New Jersey divorce granted to him in 1970.

"I further explained in detail the fact that he would have no legal rights whatsoever with respect to Alissa Lynn upon signing this new Consent Form. I feel confident that he comprehended the magnitude of such a signing.

"I also explained to Mr. Singer that any agreements we made with respect to Alissa Lynn would be strictly man-to-man with no legal basis whatsoever. He agreed and stated that he was not overly concerned because Mr. Singer and I have had a cordial relationship in all matters pertaining to Alissa's well-being.

"Both Mrs. Forbes and I witnessed Mr. Singer's signature which is affixed to the revised Consent Form which gives specific reference to the hearing held on August 30, 1972. I would add also that I reviewed with Singer the Judge's comments in which he expressed concern in the originally signed Consent Form with respect to the references made to the New Jersey divorce." Relying upon the unconditional consent and upon this letter, the court entered a Final Decree of Adoption on September 11, 1972.

On March 7, 1973, Singer filed a petition to open the decree of adoption, alleging that he had received no notice of the adoption hearing and that his signature to the consent had been obtained by fraud and deception.[1] A hearing was held thereon at which Singer testified, concerning the circumstances surrounding his signing of the unconditional consent form on September 3, 1972, that Mr. Forbes had told him that the occasion for such a further document was the fact that Forbes' lawyer had lost the earlier consent form. He testified that in answer to his questions concerning the unconditional form of consent and its reference to a hearing already held of which he had received no notice, Mr. Forbes had assured him that such hearing was "inconsequential" because the consent form had not been produced. Furthermore, he testified that he was told that it was not necessary for the new consent form to have any reference to the New Jersey divorce decree

---

[1] Singer testified that he did not learn of the adoption decree until December 1972.

since "the judge had been informed of all the conditions that were involved," and that he was therefore convinced that the new form of consent had the same meaning as the one he had already signed.

In light of the Forbes' acceptance of support payments and recognition of Singer's visitation rights for six months after the adoption decree was entered, the court below reasoned that regardless of which version of the conversations incident to the signing of the September 3, 1972, unconditional consent form was actually true, "both parties intended some sort of 'adoption' dependent upon their own ground rules, not that contemplated by the laws of Pennsylvania" and "that neither [the Forbes] nor Singer had in contemplation the real and legal concept of 'adoption' when they negotiated for the signing of the crucial consent in issue." It concluded that there was a mutual mistake of fact and law between the parties as to the legal effect and consequences of a decree of adoption and on July 31, 1973, ordered that the adoption decree be opened.[2] This appeal was taken. We now affirm the decree opening the adoption decree below.

This Court has recently stated in *Chambers Appeal,* 452 Pa. 149, 305 A.2d 360 (1973), and in *List Adoption,* 418 Pa. 503, 211 A.2d 870 (1965), that a decree of adoption should not be vacated without clear and convincing proof of the decree's invalidity and that the burden of proof rests with the one who seeks to vacate the adoption decree. We hold that Singer has met this burden.

---

[2] The order further granted leave to the Forbes to file an amended petition for adoption, if they so decided, with permission to Singer to file an answer, whereupon either party might order the adoption petition on for hearing de novo.

On October 9, 1973, Judge SATTERTHWAITE filed an opinion below in compliance with Supreme Court Rule 56.

Under the Adoption Act of July 24, 1970, P. L. 620, No. 208, art. IV, §411(3), 1 P.S. §411(3) (Supp. 1974), absent a showing of abandonment the consent of a natural parent is necessary to effect an adoption. It has been stated previously that "the consent prescribed by the Adoption Act is a parental consent that is intelligent, voluntary and deliberate." *Susko Adoption Case,* 363 Pa. 78, 83, 69 A.2d 132, 135 (1949). We now add that this consent must be clear and unequivocal.

A decree of adoption here would terminate forever all relations between Alissa and her natural father. For all purposes, legal and practical, she would be dead to Singer and he would lose his right ever to see her again or ever to know of her whereabouts. *See Harvey Adoption Case,* 375 Pa. 1, 99 A.2d 276 (1953). Singer simply did not consent to such an adoption. The record clearly indicates that from the time that he first agreed to an adoption in the amendment to the New Jersey divorce decree, Singer never intended to give up his parental rights. Although his signature did appear on the unconditional consent form, it was nevertheless conditioned upon the retention of these rights. Mr. Forbes' testimony regarding the conversations and understandings of the parties on September 3, 1972, at the signing of the unconditional consent form indicates that *but for* his assurance that he would continue Singer's rights on a goodwill basis, Singer would not have consented to the adoption. "Q. And is your answer to the question, then [that you admit that] after May of 1972 he did not change his position with regard to preserving those rights [under the New Jersey divorce decree], is that correct? A. That is correct. Q. Even at the time on September 3rd, 1972, when you showed him [the new form of] consent, he brought up the matter of those rights not being incorporated in this consent, isn't that correct? A. That is correct. Q. And did you assure him at that time that the rights would be

preserved privately, as between you and him, if he would sign the consent? . . . A. It was my intention at that time to consent, to follow the Court Order in New Jersey. . . . I told him we intended to follow those. Q. Did you assure him that he was not giving up those rights? A. No, I did not. In fact, I told him just to the contrary, there was no legal way to enforce this right, and that he would have to rely on our good will and our good relations we had until that time. Q. But you assured [him] that he would have those rights, however, relying upon your good will to obtain them? A. That is right."

The problem is that the preservation of these rights, even through an informal agreement, or on a goodwill basis, conflicts with the incident of complete control and custody of an adopted child by an adopting parent as contemplated by law. We cannot say that a consent conditioned upon the preservation of certain rights with respect to the child is sufficient to effectively establish the statutorily required consent. The severance of natural ties occasioned by adoption is of such obvious finality as to demand clear and unequivocal consent by a natural parent and we believe that Singer's consent here was insufficient.

There are additional circumstances which, when considered along with Singer's conditional consent, distinguish this case from those where we have held it improper to vacate an adoption decree. For example, in *List Adoption, supra,* it was held that a unilaterally alleged secret understanding—which understanding was seriously disputed—between the natural mother and the adopting paternal grandparents that the adoption of the child by the latter was to be temporary was not an adequate ground to vacate an adoption decree. In *List,* it was the natural mother desirous of joining the United States Army who contacted the paternal grandparents and requested that they adopt the child.

She expressly waived her right to be present at the hearing held with regard to the adoption and she waited two and one-half years after the adoption decree was entered before she sought to have it vacated. This Court wisely decided that vacation of the adoption decree under those circumstances would "place in jeopardy and imperil adoption decrees generally." *List,* 418 Pa. at 517, 211 A.2d at 877.

To the contrary, Singer in this case never sought to be relieved of his parental duties to support his daughter; he was not informed of the hearing held with regard to the adoption; and he sought to vacate the adoption decree within six months of its entrance and shortly after learning of its existence.

With convincing evidence that Singer's consent was insufficient and, in light of the above-mentioned circumstances, we cannot say that vacation of the adoption decree here would in any way imperil adoption decrees generally.

Decree affirmed. Costs on appellants.