# In the Interest of Skyler Cross

*Deanna L. Nocero,* for petitioner.
*Ryan C. Long,* for respondents.
*Joanne Nene,* for C.Y.S.

HODGE, *J.,* June 28, 2010—This case is brought before the court by the Natural Father's petition to vacate adoption decree. The law of adoption in Pennsylvania is governed by the Adoption Act, 23 Pa.C.S. §2101, placed into effect January 1, of 1981, and then amended in 1992. In any type of adoption proceeding, Pennsylvania law requires that the natural parents' rights be terminated either voluntarily or involuntarily. 23 Pa.C.S. §§2501, 2502 and 2511.

On November 3, 2006 the natural father voluntarily executed a consent to adoption. This consent indicated his intent to relinquish all rights he had as the child's natural father. Although the consent had a provision, which granted the natural father biweekly visitation with the minor child, it was expressly stated in the consent that if Natural Father did not exercise more than half of his biweekly visits during any one-year period, his right to visitation would be terminated. Moreover, this court takes notice of paragraph 12 in Natural Father's consent to adoption which states, "I believe the *best interest and permanent welfare of the child* shall be served by the adoption. This consent, being made of my own free will and accord without coercion is *intended by me to be ir-revocable.*" (emphasis added) Once 30 days had passed

since Natural Father executed the consent, Natural Father was no longer able to exercise his right to revoke his consent to adoption. All of the above described provisions were expressly stated in clear and unequivocal terms in Natural Father's consent to adoption.

On March 23, 2007, this court conducted a hearing on a petition to confirm consent to adoption by the natural parents of Skyler Cross. Even though Natural Father received notice of the hearing, he failed to present himself before the court. Consequently, this court confirmed the consent pursuant to the requirements of 23 Pa.C.S. §2504.

By final decree, on May 3, 2007, this court approved the adoption of Skyler Cross Thompson by the adoptive parents, Charles A. and Lois J. Cross. At this point in time, a full six-month period had passed since Natural Father executed his consent to adoption. Additionally, the May 3, 2007 decree does not provide that the natural father is entitled to any visitation or other rights regarding the minor child, and at no point in time have the adoptive parents entered into an agreement with the natural father granting him visitation.

Natural Father did visit with the minor child on various and irregular occasions, and then a period of time passed when no visitation arrangements were made. On November 9, 2009, Natural Father, by and through his attorney, presented this court with a motion to enforce the consent agreement. The adoptive parents of the minor child in question (respondents) responded to Natural Father's petition. Consequently, a hearing was scheduled for January 12, 2010. At the January hearing, this court ordered that the hearing be bifurcated to initially deter-

mine, as a matter of law, whether Natural Father has a legal right to enforce the terms of the consent to adoption agreement he entered into on November 3, 2006.

An adoption decree is presumed to be valid; as such, a person who challenges such a decree has the burden of showing its invalidity by clear and convincing evidence. *In the Matter of the Adoption of Christopher P.,* 480 Pa. 79, 84, 389 A.2d 94, 97 (1978); *Singer Adoption Case,* 457 Pa. 518, 522, 326 A.2d 275, 277 (1974); *List Adoption Case,* 418 Pa. 503, 509, 211 A.2d 870, 873-74 (1965). In addition the Pennsylvania Supreme Court in *List* held that proof of the invalidity of an adoption decree must be clear and convincing, and unless the petitioner can overcome this heavy burden, an adoption decree should not be vacated. *Id.* at 517, 211 A.2d at 877.

Both parties in this action cite the case of *Singer Adoption Case,* 457 Pa. 518, 326 A.2d 275 (1974) to support their position. In *Singer,* the natural father of the minor child in question executed a consent to adoption, and like the case at bar, the minor child was subsequently adopted. However, *Singer* must be distinguished by several facts: (1) the natural father in *Singer* did not have notice of the subsequent adoption proceedings; (2) he was under the impression that there would be a preservation of his parental rights and duties; and (3) the natural father sought to have the adoption decree vacated within six months. *Id.,* 457 Pa. at 525, 326 A.2d at 278-79. Because of these three factors, the court in *Singer* affirmed the lower court's decision to open the adoption decree.

The case now put before the court has several factors which clearly distinguish it from the case of *Singer.* First,

Natural Father did in fact have notice of the adoption proceedings. The record indicates that this court properly terminated the parental rights of Natural Father on March 23, 2007, after a hearing on a petition to confirm consent to adoption. Although Natural Father was represented by counsel at this hearing, Natural Father did in fact fail to present himself before the court.

Furthermore, although Natural Father was under the presumption that he would have biweekly visits with the minor child, he is not contending that regardless of his consent, it was his belief that he would still have some form of parental rights over the minor child. This case is apparently different from *Singer* in that Natural Father is under no obligation to support or care for the minor child. Nor does Natural Father present any evidence that it was his intent to support and care for the minor child regardless of his consent. Natural Father knew that the consent to adoption would result in a complete termination of all his parental rights, and consequently of any obligation to care for his daughter. His intention is clearly evidenced though the clear and unequivocal terms of the consent to adoption that Natural Father willfully executed.

How could this court expect any individual child to succeed in his newly established household, if not for the permanent nature of the adoption proceeding. The new status created by adoption *cannot be terminated merely because of a second thought regret on the part of a natural parent. Nauman Adoption Case,* 177 Pa. Super. 317, 320, 110 A.2d 925, 926 (1955). Although petitioner asserts that the decree of adoption should be

terminated, because his consent was not intelligent, voluntary, and deliberate, the facts presented to this court cannot support such a conclusion. Rather, this court believes Natural Father's consent agreement best reflects his true intent to allow the minor child to be adopted.

Lastly, Natural Father petitioned this court to enforce his consent to adoption agreement on November 9, 2009, almost three years to the day that Natural Father executed the agreement in the first place, and two and a half years after this court entered a final decree of adoption. Natural Father later petitioned this court on July 11, 2010 to vacate the adoption decree altogether.

There is ample case law to support the finding that consent by the natural parent may be withdrawn "at any time before the entry of a final decree of adoption," but not thereafter. *Hildenbrand Appeal,* 405 Pa. 579, 176 A.2d 900 (1962); *Hunter Adoption Case,* 421 Pa. 287, 218 A.2d 764 (1966); *Gunther Adoption Case,* 416 Pa. 237, 206 A.2d 61 (1965); *Stone Adoption Case,* 398 Pa. 190, 156 A.2d 808 (1959); *Harvey Adoption Case,* 375 Pa. 1, 99 A.2d 276 (1953). The court in *Hildenbrand* further reasoned that it would be cruel and unjust to subject the adoptive parents to "the risk of a change of mind by the natural parents . . . with resulting heartbreaks to several persons and possible harm to the child." *Id.,* 405 Pa. at 582, 176 A.2d at 901. Likewise this court considers the unjustifiable injury that would certainly result if the decree of adoption was vacated and Natural Father's consent to adoption was voided.

The findings of the Pennsylvania Supreme Court in *Harvey Adoption Case,* 375 Pa. 1, 3-4, 99 A.2d 276, 277

(1953), properly summarizes the everlasting nature of an adoption proceeding; "a decree of adoption terminates forever all relations between the child and its natural parents, severs it entirely from its own family tree and engrafts it upon that of its new parentage. Persons who rely on the court system to finalize the adoption of minor children seek one common underlying element: *finality.* *List,* 418 Pa. at 516-17, 211 A.2d at 877 (citing *Nauman,* 177 Pa. Super. at 320, 110 A.2d at 926).

This court does recognize that in cases like *Singer* adoption decrees can be vacated because the petitioning party was able to establish that the consent to adoption was invalid. However, there is also case law representing instances where courts refused to vacate the adoption decree on the grounds that the natural parents' consent was valid and enforceable. See *e.g., Hildenbrand Appeal,* 405 Pa. 579, 176 A.2d 900 (1962); *Hunter Adoption Case,* 421 Pa. 287, 218 A.2d 764 (1966). As previously stated, a party petitioning the court to vacate an adoption decree has the burden of proving by clear and convincing evidence that the decree is invalid. Natural Father in this case is unable to meet that burden. The record indicates that Natural Father was represented by counsel throughout the adoption proceedings, and as such was properly advised as to the finality of his consent. Furthermore, as previously noted, Natural Father's consent expressly stated that it was his intent for the consent to adoption to be final. Natural Father had the opportunity to withdrawal his consent up to the time of the adoption hearing; his failure to do so should not prevent this court from exercising its discretion in accepting the efficacy of his consent agreement. *List,* 418 Pa. at 516, 211 A.2d at 877.

Additionally, this court executed the decree of adoption pursuant to the statutory provisions which require that the court be satisfied that: (1) the statements made in the adoption petition are true; (2) the welfare of the person being adopted will be promoted; and (3) the requirements of the statute are being complied with. The May 3, 2007 final decree was entered into after a hearing at which the child proposed to be adopted was present, along with the adoptive parents and one witness, the decree states that the court was satisfied that all the statements made in the petition for adoption were true and that "all of the requirements of the Adoption Act have been met." Because all of the statutory requirements have been meet and complied with, the petition to vacate adoption decree is denied, and this matter is held for further proceedings.

## ORDER

And now, June 29, 2010, this matter being before the court on June 17, 2010, for argument on petitioner's petition to vacate adoption decree, after consideration of the arguments of counsel, and a complete and through review of the record and briefs of the parties, the court hereby orders and decrees as follows:

(1) The petitioner's petition to vacate adoption decree is hereby denied.

(2) The prothonotary shall properly serve notice of this order upon counsel of record and any party not represented at their last known address as contained in the court's file.