J-S46022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF: BABY BOY G. : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: C.M. & A.M., :
:
Petitioners :
:
:
: No. 9 MDA 2017

Appeal from the Order Entered December 16, 2016
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 2016-4124

BEFORE: BOWES, OLSON, JJ., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.: **FILED SEPTEMBER 07, 2017**

Appellants, C.A.M. ("Adoptive Father") and A.L.M., ("Adoptive Mother") (collectively, "Adoptive Parents" or "Petitioners"), appeal from the order entered on December 16, 2016, denying their petition to confirm the consent to the adoption of Baby Boy G. ("Child") executed by Child's birth mother, J.G., ("Mother"), on January 25, 2016, based on the finding that Mother timely revoked her consent in writing pursuant to 23 Pa.C.S.A. § 2711(c) and (d) of the Adoption Act. We affirm.

The trial court set forth the procedural history of this appeal as follows.

> The first docketed activity in this matter was the [Adoptive Parents'] report of intention to adopt, filed on March 4, 2016, stating their desire to adopt "Baby Boy [G.]," born to [Mother]

_____

* Former Justice specially assigned to the Superior Court.

[in December of 2015]. On March 16, 2016, the [Adoptive Parents] filed a petition to confirm consent and a petition for adoption. The petition to confirm consent recites that [Mother] had signed a consent of biological parent to adoption on January 25, 2016, and that the identity of the birth father is unknown, as set forth in [] Mother's Affidavit also signed by [Mother] on January 25, 2016. Both the consent to adoption and affidavit were attached to the petition to confirm consent.

A scheduling request was filed on behalf of the [Adoptive Parents] on March 31, 2016, and the petition to confirm consent and petition for adoption were set for hearing on May 24, 2016. Given that the birth father was unknown, the court permitted service on the birth father by publication by order entered of record on March 31, 2016.

The [Adoptive Parents] and their counsel appeared in court at the time of the May 24, 2016 hearing. . . . [Mother] appeared as well. [Mother] was not represented by counsel. [Mother] had not filed any objections of record, but appeared at the hearing to object to the petition to confirm consent. At that time, [Mother] alleged she had been coerced and unduly pressured into signing the consent to adopt. She appeared to the court to be in a state of agitation and distress. Given her allegations and overall appearance, and the fact that she was unrepresented, the court continued the hearing on the petition to confirm consent to permit [Mother] the opportunity to secure legal counsel. The court thereafter granted a request by [Mother] for court[-]appointed counsel, and appointed Barbara Topinka, Esquire, to represent her. A guardian *ad litem* was appointed to represent the best interests of [] [C]hild.

By Order filed June 16, 2016, the hearing on the petition to confirm consent was rescheduled for September 1, 2016, the first date the schedules of all involved could accommodate. Following a pre-hearing conference on August 29, 2016, the hearing was rescheduled for December 8, 2016 at the request of counsel for [Mother], (who contemplated withdraw[al] at that time), and over objection of the [Adoptive Parents]. In follow-up to the discussion at the pre-hearing conference, Attorney Topinka filed a motion to withdraw as [Mother's] counsel on September 1, 2016, which was granted by the court. Substitute counsel was appointed for [Mother] by order dated September

16, 2016 appointing Attorney Charles Kroboth, Esquire, to represent her.

At the hearing on December 8, 2016, [Mother], through her counsel, challenged the consent to adoption on two grounds: (1) she had timely revoked the consent within the thirty[-]day period provided under the Adoption Act, 23 Pa.C.S.A. [§] 2101, *et seq.*; and, (2) the consent had been secured in the first instance through fraud, duress and coercion. As to the latter ground for relief, [Mother] made an oral motion asking the court to permit her to raise the challenge to the validity of the consent *nunc pro tunc*, as [Mother] conceded that she had not petitioned the court within sixty days of signing the consent as required by the Adoption Act. The court deferred ruling on the *nunc pro tunc* motion at that time and permitted presentation of evidence on all issues.

Trial Court Opinion, 1/30/17, at 1-2 (superfluous capitalization omitted).

The trial court set forth the factual background of this appeal, as developed at the hearing on December 8, 2016, as follows.

. . . Although the evidence was presented on the revocation and fraud/duress issues in bifurcated fashion, as will become evident from the following discussion, portions of the testimony on the fraud and duress issue were also relevant to the issue of whether [Mother] timely revoked her consent to adoption.

In support of their *prima facie* burden on their petition to confirm consent, the [Adoptive Parents] presented their original petition to confirm consent and accompanying exhibits, which included a consent of biological parent to adoption signed by [Mother] on January 25, 2016 (Exh. A), and [] Mother's Affidavit as to the identity of the biological father (Exh. B). The [Adoptive Parents] also presented proof of service by publication on the putative birth father. Based on this evidence, the [Adoptive Parents] requested entry of an order confirming the consent to adoption and terminating the parental rights of [] [M]other and father.

In opposition to the petition to confirm consent, [Mother] testified on her own behalf as to the steps she took to revoke the consent and the circumstances attendant to these events. [Mother] testified that she began to have doubts about her

decision to place [Child] for adoption shortly after signing the adoption paperwork at the hospital. (Tr., 12-8-16 Hearing, at 24). [Child] was born premature and was admitted to the NICU for care immediately after birth. [Child] remained in the hospital approximately seven or eight weeks, until mid-February of 2016. (*Id.* at 24-26). [Mother] testified that she had informed "everyone," including nurses at the hospital, the [Adoptive Parents], and her own lawyer, Denise Bierly, Esquire, that she did not want to sign the consent to adoption and other paperwork until after [Child] was discharged from the hospital. She testified that she was pressured into signing the documents, including the consent, and that she knew it was a mistake soon after signing. (*Id.* at 40-41).

[Mother] testified that, within a couple of days after [Child] was released from the hospital, she began contacting Attorney Bierly by telephone and text message about revoking her consent. In mid-February, she ultimately spoke with either Attorney Bierly or her assistant, Meshia Calhoun,[2] who advised her she would have to send a written revocation to the law office to revoke her consent. [Mother] testified she was advised by Attorney Bierly's office that, if she sent the revocation to the office, Attorney Bierly would contact the [Adoptive Parents'] attorney, Justin Miller, Esquire, to advise him of her intent to revoke. (*Id.* at 25-29). This was confirmed by Attorney Bierly, as further noted below.

[Mother] testified that she typed a revocation letter, signed it, put it in an envelope and sent it to Attorney Bierly via United States mail. (*Id.* at 28-32). [Mother] did not keep a copy of the letter or send the letter by certified mail, trusting that sending the letter to her attorney as advised to do would be sufficient. (*Id.*). Although [Mother] could not identify the particular date she mailed the revocation letter, she testified that she mailed it to Attorney Bierly before expiration of the thirty[-]day revocation period. She was certain of this timing because she sent a follow-up text message to Attorney Bierly stating she had sent her the revocation letter in the mail, and that text message was sent before expiration of the thirty days.[3] As noted below, Attorney Bierly, who was called by the [Adoptive Parents] to testify regarding [Mother's] allegations of fraud and duress, acknowledged receiving the text message from [Mother] on February 23, 2016. The thirty days to revoke after [Mother] signed the consent to adoption expired on February 24, 2016.

- 4 -

[Mother] also testified that she had been in communication with Ms. Calhoun about the revocation.

In rebuttal, the [Adoptive Parents] presented testimony from Meshia Calhoun to prove the revocation letter was never received at Attorney Bierly's law office. Ms. Calhoun testified to the procedures for cataloguing mail at the law office, and testified there had never been an occasion when an anticipated piece of mail had not reached the office. (Tr. 12-8-16 Hearing, at 53-56). Ms. Calhoun also initially testified that she had not received any communications from [Mother] about the revocation, but later acknowledged an email message shown to her on cross examination that clearly showed communication from [Mother] to Ms. Calhoun on March 4, 2016[,] in which [Mother] states that she sent the revocation "last week." (*Id.* at 57-59). [Mother] also states in the email that she had been trying to reach Attorney Bierly, who refused to accept her calls.[4] Ms. Calhoun acknowledged having received the email and thought she had forwarded it to Attorney Bierly. She did not recall having any discussion of it with Attorney Bierly. *Id.* [Mother] received a letter from Attorney Bierly in early March of 2016 in which Attorney Bierly informed [Mother] she would no longer represent her. The letter was dated March 5, 2016; the date of [Mother's] receipt is not clear. (*Id.* at 34, 37). Neither party admitted the actual letter into evidence. The circumstances involving the withdraw[al] letter are further noted below.

In addition to the above, [Mother] testified she had spoken with [Adoptive Father], before she sent the revocation letter to Attorney Bierly. She said [Adoptive Father] called her after learning from Attorney Miller that she was planning to revoke her consent. [Mother] told him yes, but said very little else. She testified that she was not on good terms with the [Adoptive Parents] as of that point in time.

[Mother] was questioned regarding why she did not take further action when Attorney Bierly stopped communicating with her after she mailed the revocation and then withdrew as her counsel. [Mother] testified that she was very stressed and felt no one was listening to her or hearing her, and she believed she had taken all the steps necessary to revoke her consent. She testified she did not have money to hire a lawyer for representation and did not know what to do. She appeared at

the initial hearing on the petition to confirm consent to bring the issue (and the issue regarding her allegations of fraud and duress) before the court.[5] (*Id.* at 102).

The [Adoptive Parents] also presented testimony from Christine Millinder, Register of Wills and Clerk of the Centre County Orphan[s'] Court. Ms. Millinder testified about receiving a phone call from [Mother] on March 4, 2016. She said [Mother] told her she would be sending a revocation to the court. (Tr. 12-8-16 Hearing, at 49-52). [Mother] acknowledges this conversation. (*Id.* at 45-46). It is undisputed that [Mother] did not send a revocation letter directly to the court.

Both parties also presented testimony as to the fraud, duress and coercion allegations.[6] By way of summary, [Mother] testified that she was under substantial pressure due to the premature birth of [Child] after unanticipated complications with her pregnancy. At birth, [Child] was taken to the NICU. He was not discharged from the hospital until approximately seven to eight weeks after birth. [Mother] went to the hospital to see [Child] every day during this time, and she pumped breast milk for [Child]. (Tr. 12-8-16 Hearing at 68-80, 100). She testified she made it very clear to hospital nursing staff, to the [Adoptive Parents] as the putative adoptive parents, to the adoption agency, and to her own lawyer, Attorney Bierly, that she did not want to sign the adoption paperwork until [Child] was released from the hospital. She testified about comments by nursing staff and others that made her feel pressured into proceeding with signing the paperwork before she was ready. She said she felt unduly pressured by the [Adoptive Parents], and that one of the attending nurses was relieved from her assignment because of inappropriate involvement in the matter. (*Id*[.] at 85-93). [Mother] also testified she was taking prescription medications, suggesting that she was confused and vulnerable as a result. (*See id.* at 85). She did not present any medical testimony on these issues, or corroborating evidence regarding the nurse she believes was reassigned. She concedes she met with Attorney Bierly and Ms. Calhoun on January 25, 2016, before [Child] was released from the hospital, and that she signed the documents on that date. As noted above, she testified that she regretted her decision fairly immediately.

The [Adoptive Parents] presented testimony from: (i) Abigail Davis, the owner and director of the adoption agency that

- 6 -

facilitated the adoption plan; (ii) Attorney Bierly; and, (iii) Patricia Hackman, a counselor recommended to [Mother] in the course of these events. The [Adoptive Parents] did not testify. Portions of the testimony most pertinent to the issue of revocation of [Mother's] consent to adoption are summarized below.

Ms. Davis appeared by telephone. Her testimony was seemingly based on vague recollection and incomplete notes made at some point after the underlying events occurred. (*See* Tr. 12-8-16 Hearing, at 135, 140, 142). Her testimony was also inconsistent with that of other witnesses on several points. For example, Ms. Davis stated that she had a three[-]hour telephone conversation with [Mother] on February 29, 2016, in which [Mother] told her she had threatened to revoke her consent but that she never actually wrote or sent the letter. (*Id.* at 133). [Mother] denied ever having a three[-]hour conversation with Ms. Davis, and denied ever telling Ms. Davis she had not written or sent the revocation. (*Id.* at 189-90). When pressed on the issue, Ms. Davis testified that her notes did not reflect whether the "letter" she recalled speaking with [Mother] about was a letter to be sent to Attorney Bierly or a letter to be sent directly to the Orphan[s'] Court. (*Id.* at 136-37). Ms. Davis also testified that she had arranged for the counselor, Patricia Hackman, to meet with [Mother] and that this occurred by the end of December shortly after [Child] was born. (*Id.* at 138). Testimony of other witnesses, including Ms. Hackman and Attorney Bierly, was that Attorney Bierly made the arrangements for counseling with Ms. Hackman and that this occurred at the end of January. In all, the court did not find Ms. Davis' testimony in this case to be very reliable.

Attorney Bierly's testimony established that she was retained by the adoption agency to represent [Mother] on a flat fee basis, which would be paid regardless of the outcome of the adoption. (*Id.* at 155). Attorney Bierly's first contact with [Mother] was after [Child] birth. She first met [Mother] in person on January 25, 2016, the day the consent to adoption and other papers were signed. Attorney Bierly testified that she had waited for [Mother] to say she was ready to sign before arranging the meeting for January 25. (*Id.* at 158). Prior to that, she arranged counseling with Ms. Hackman in response to what she perceived to be typical expressions of concern attendant to adoptions. (*Id.* at 156-57).

On January 25, 2016, the day [Mother] signed the consent to adoption, Attorney Bierly reviewed the revocation process from the second page of the consent document with her, telling her she would need to mail a revocation either to her office or the Centre County Orphan[s'] Court clerk within thirty days if she wished to revoke her consent. (*Id.* at 160-61, 170-71). Attorney Bierly went over this with [Mother] on other occasions as well, including an occasion in mid-February of 2016 when [Mother] called and asked her how to revoke the consent. (*Id.* at 162; 171-72). According to Attorney Bierly, she again advised [Mother] to mail the revocation to her on that occasion, and also told her she would immediately inform the [Adoptive Parents'] legal counsel of [Mother's] decision. (*Id.* at 172). Attorney Bierly testified she received a text from [Mother] on February 23, 2016 - a day before expiration of the revocation period - telling her [Mother] had already sent her the revocation. Attorney Bierly also testified that she never received the revocation in the mail. (*Id.* at 162).

Attorney Bierly sent a letter withdrawing her representation of [Mother] on March 5, 2016 due to a breakdown in their relationship, including allegations by [Mother] that Attorney Bierly had stolen [Child]. (*Id.* at 162-63). [Attorney] Bierly did not provide [Mother] information about any remaining legal avenues to challenge the consent to adoption at that time. (*Id.* at 172-73).

Testimony from Patricia Hackman established that she was contacted by Attorney Bierly on January 29, 2016 to offer counseling to [Mother]. (*Id.* at 179). Ms. Hackman and [Mother] met for the first time on January 31, 2016. They discussed various concerns [Mother] had, including concerns about her son and about finances. (*Id.* at 179-81). Ms. Hackman testified that [Mother] called her on February 22, 2016 and told her she wanted to revoke her consent. Ms. Hackman had a copy of the consent to adoption signed by [Mother], and she and [Mother] together reviewed, over the telephone, the paragraph explaining how to revoke. (*Id.* at 182, 187). [Mother] informed Ms. Hackman she was going to proceed with sending the revocation in accordance with the instructions on the consent to adoption. (*Id.* at 184-85).

[2] Ms. Calhoun was also referenced during the course of the hearing as Meshia "Barton."

[3] Testimony from [Mother] and Attorney Bierly demonstrated that text messaging was a typical form of communication between the two during their attorney-client relationship. (**See e.g.**, Tr. 12-8-16 Hearing, at 29, 172).

[4] The email actually states that Attorney Bierly hung up on [Mother] twice. (Tr. 12-8-16 Hearing, at 58-59). The record is unclear as to the level or substance of any conversation that occurred. Attorney Bierly's testimony suggested that friction had developed between her and [Mother] sometime between mid-February and early March.

[5] The [Adoptive Parents'] petition to confirm consent was filed on March 4, 2016, a day before Attorney Bierly sent the letter withdrawing as [Mother's] counsel.

[6] As noted above, the court did not rule on those allegations after determining that [Mother] had validly revoked her consent within thirty days as permitted by the Adoption Act.

Trial Court Opinion, 1/30/17, at 3-8 (footnotes in original; superfluous capitalization omitted).

The trial court explained its decision as follows:

At the conclusion of the evidence, the court directed the parties to submit memoranda outlining their positions and supporting legal authority by December 12, 2016. Both parties complied with this directive.

On consideration of the evidence and the arguments of counsel, the court entered an Order on December 16, 2016 denying the [Adoptive Parents'] petition to confirm consent, having concluded [Mother] had timely revoked her consent under the Adoption Act. In light of this conclusion, the court did not rule on the issues involving [Mother's] challenge to the validity of the consent based on fraud and duress.

The [Adoptive Parents] filed a notice of appeal and statement of [errors] complained of on appeal on December 28, 2016,[1] raising nine bases of alleged error.

_____

[1] The court also notes that [Adoptive Parents] filed a petition for involuntary termination of parental rights [of] Mother on December 12, 2016. Prior to [Adoptive Parents'] appeal, the petition for involuntary termination was scheduled for hearing on April 6, 2017.

Trial Court Opinion, 1/30/17, at 1-3 (footnote in original; superfluous capitalization omitted).

In their brief on appeal, Adoptive Parents raise the following issues:

1. Whether the court erred and abused its discretion in denying [Adoptive Parents'] petition to confirm consent?

2. Whether the court committed an error of law and/or abused its discretion by failing to shift the burden to [Mother] after [Adoptive Parents] presented overwhelming evidence to rebut the presumption that [Mother] had mailed her revocation?

3. Whether the court erred and abused its discretion by holding that [Mother's] testimony was credible?

4. Whether the court erred and abused its discretion by determining [Mother] properly revoked her consent to adoption despite overwhelming evidence and testimony to the contrary?

5. Whether the court erred and abused its discretion by holding that any corroborating evidence or testimony was sufficient to support its finding that [Mother] had mailed a written revocation of her consent?

6. Whether the court committed an error and abused its discretion in determining the [Mother] met the applicable burden of proof to show, absent a physical writing, that she had revoked her consent to adoption?

- 10 -

7. Whether the court committed an error of law by accepting a revocation of consent not executed in accordance with the statutory requirements of 23 Pa.C.S.A. §2711?

8. Whether the court erred and abused its discretion in failing to enforce the contract established by the consent to adoption executed by [Mother]?

9. Upon receipt and review of the transcript of the hearing [Adoptive Parents] will not pursue the ninth issue raised in their [Pa.R.A.P.] 1925(b) Statement.

Adoptive Parents' Brief, at 6-8.

Adoptive Parents summarize their argument as follows:

The Adoption Act provides specific provisions for revoking a consent to adoption. 23 Pa.C.S.A. §2711(c). Revocations must be in writing. *Id.* Revocation requires compliance with the statute; mere intent to revoke is not sufficient. In the case at bar, [Mother] did not establish that she ever put her wish to revoke her consent in writing.

If service of a revocation of consent is attempted via the postal system, the Mailbox Rule applies. The presumption of mailing is rebuttable. In the case at bar, [Adoptive Parents] presented overwhelming evidence that [Mother] did not execute a valid revocation of her consent to adoption.

The plain meaning of the Adoption Act does not allow revocation of consent by text message. The trial court's attempt to create new law by finding otherwise is incompatible with the plain meaning of the statute and should be reversed.

*Id.* at 12.

With regard to our standard of review from a decree of the Orphans'

Court, we have stated:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines

- 11 -

the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*Appeal of: J.T.M.*, 845 A.2d 861, 863 (Pa. Super. 2004) (internal citation omitted).

Regarding the definition of an abuse of discretion, this Court has stated:

> [a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa. Super. 2007) (quotation omitted).

Our Supreme Court has explained that, pursuant to the Adoption Act, now found at 23 Pa.C.S.A. § 2711, the consent of a natural parent whose parental rights have not already been terminated is necessary to effect an adoption. *In the Matter of the Adoption of Christopher P.*, 389 A.2d 94, 97 (Pa. 1978) *citing Singer Adoption Case*, 326 A.2d 275, 277-278 (Pa. 1974). The consent to the adoption must be intelligent, voluntary and deliberate. *Id.* Further, the consent must be clear and unequivocal. *Id.*

Section 2711 of the Adoption Act provides, in pertinent part, as follows:

**§ 2711. Consents necessary to adoption**

**(a)  General rule.**—Except as otherwise provided in this part, consent to an adoption shall be required of the following:

\* \* \*

(3)  The parents or surviving parent of an adoptee who has not reached the age of 18 years.

\* \* \*

**(c)  Validity of consent.—**No consent shall be valid if it was executed prior to or within 72 hours after the birth of the child.  A putative father may execute a consent at any time after receiving notice of the expected or actual birth of the child.  Any consent given outside this Commonwealth shall be valid for purposes of this section if it was given in accordance with the laws of the jurisdiction where it was executed.  **A consent to an adoption may only be revoked as set forth in this subsection**.  The revocation of a consent **shall be in writing** and shall be served upon the agency or adult to whom the child was relinquished.  The following apply:

(1)  Except as otherwise provided in paragraph (3):

\* \* \*

(ii)  For a consent to an adoption executed by a birth-mother, **the consent is irrevocable more than 30 days after the execution** of the consent.

(2)  An individual may not waive the revocation period under paragraph (1).

(3)  Notwithstanding paragraph (1), the following apply:

(i)  An individual who executed a consent to an adoption may challenge the validity of the consent only by filing a petition alleging fraud or duress within the earlier of the following time frames:

(A)  Sixty days after the birth of the child or the execution of the consent, whichever occurs later.

- 13 -

(B) Thirty days after the entry of the adoption decree.

(ii) A consent to an adoption may be invalidated only if the alleged fraud or duress under subparagraph (i) is proven by:

(A) a preponderance of the evidence in the case of consent by a person 21 years of age or younger; or

(B) clear and convincing evidence in all other cases.

23 Pa.C.S.A. § 2711 (a)(3), (c)(1)(ii), (c)(2), and (c)(3) (emphasis added).

Section 2711(d) sets forth the contents of a parent's consent to adoption and for a revocation of the consent as follows:

**(d) Contents of consent.—**

(1) The consent of a parent of an adoptee under 18 years of age shall set forth the name, age and marital status of the parent, the relationship of the consenter to the child, the name of the other parent or parents of the child and the following:

I hereby voluntarily and unconditionally consent to the adoption of the above named child.

I understand that by signing this consent I indicate my intent to permanently give up all rights to this child.

I understand such child will be placed for adoption.

**I understand I may revoke this consent to permanently give up all rights to this child by placing the revocation in writing and serving it upon the agency or adult to whom the child was relinquished.**

* * *

**If I am the birth mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written**

> **revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).**
>
> I have read and understand the above and I am signing it as a free and voluntary act.
>
> (2) The consent shall include the date and place of its execution and name and addresses and signatures of at least two persons who witnessed its execution and their relationship to the consenter.

23 Pa.C.S.A. 2711(d) (emphasis added).

In ***In re Adoption of J.A.S.***, 939 A.2d. 403, 408-409 (Pa. Super. 2007), this Court applied the time constraints outlined in Section 2711(c) strictly and held that a person could not assail the validity of his or her assent before the trial court unless he or she first satisfied the relevant time limitations as a threshold matter. Specifically, we reasoned,

> [t]he statute does not explicitly state it is subject to strict construction; but it does plainly provide for time constraints to revoke and/or challenge the validity of a consent to adoption. The practical consequence of the court's [contrary] interpretation effectively permitted [b]irth mother to challenge the validity of her consent to adoption at any time, based upon the existence of a technical omission in the form of the initial consent. This lack of finality is exactly the mischief the legislature intended to remedy with the revision to Section 2711 of the Adoption Act in 2004, the purpose of which was to afford finality to the adoption process. Hence[,] the statute renders a consent to adoption irrevocable more than thirty (30) days after execution. ***See*** 23 Pa.C.S.A. § 2711(c)(1)(ii). Additionally, the statute precludes a challenge to the validity of the consent to adoption after sixty (60) days following the birth of the child or the execution of the consent, whichever occurs later, and only upon the grounds of

- 15 -

fraud or duress. ***See*** 23 Pa.C.S.A. § 2711(c)(3)(i)(A). Thus, the unambiguous language of the statute required the [trial] court in this case to consider the timeliness of [b]irth mother's petition to revoke and/or challenge the validity of her consent before it considered the merits of her claim. Contrary to the court's interpretation, the threshold act that triggers these provisions of Section 2711 is the timely filing of the petition to revoke and/or challenge the validity of the consent to adoption. Whether [b]irth mother's consent to adoption was valid could be addressed only if her petition had been timely filed. Essentially, the untimeliness of [b]irth mother's petition precluded the court from addressing the issue of validity.

***Id***. (footnotes omitted). Accordingly, pursuant to ***In re Adoption of J.A.S.***, the trial court must first review the timeliness of a birth parent's petition to revoke a consent to adoption prior to addressing whether the consent is valid.

Herein, Mother signed her consent to the adoption of Child on January 25, 2016, thus, pursuant to Section 2711(c)(1)(ii), Mother had an unfettered ability to revoke this agreement until February 24, 2016. The trial court found that Mother revoked her consent, in writing, within the thirty-day statutory period. Trial Court Opinion, 1/30/17, at 14; ***see In re Adoption of J.A.S.***, 939 A.2d at 408-409.

Adoptive Parents divide their issues into groups, discussing issues 1, 2, 4, and 5 together, issues 2 and 3 together,[1] and issues 6, 7, and 8 together. For ease of our disposition, we will first address the issues in the order that

---

[1] The trial court similarly addressed the issues in groups, but addressed issue 3 separately.

the trial court addressed them, and then address Adoptive Parents' challenges to the resolution of each group of issues.

Initially, the trial court addressed Adoptive Parents' issue 3, as follows.

A. Assertion of Error No. 3 (credibility)

In paragraph 3 of their concise statement, Petitioners contend the [c]ourt erred and abused its discretion in determining that . . . [Mother's] testimony was credible. The [trial court] addresses this assertion of error first, as the issue of credibility also permeates the majority of the allegations of error raised by [Adoptive Parents]. It is well-established that credibility determinations are solely within the province of the trier of fact. *See e.g., In re Adoption of B.G.S.*, 614 A.2d 1161, 1168 (Pa. Super. 1992). Whether to accept all, some, or none of a witnesses' testimony is a question for the factfinder. *Id.* at 1169. As the finder of fact in this matter, the [trial court] concluded after listening to [Mother's] testimony, observing her conduct and demeanor, and considering all of the evidence presented at the December 8[, 2016] hearing, that [Mother's] testimony was credible. The [trial court's] determination in this regard was not an abuse of discretion, and [Adoptive Parents'] assertion of error No. 3 lacks merit.

Trial Court Opinion, 1/30/17, at 10.

The trial court had before it testimony from Mother that she had sent to Attorney Bierly, via United States mail, a typed revocation letter that she had signed, and put in an envelope. N.T., 12/8/16, at 28-32. Mother testified that she did not keep a copy of the letter or send the letter by certified mail because she trusted that sending the letter to her attorney, as she had been advised to do, would be sufficient. *Id.* The trial court found that, although Mother could not identify the particular date she mailed the revocation letter, she testified that she mailed it to Attorney Bierly before

expiration of the thirty-day revocation period. *Id.* at 29; Trial Court Opinion, 1/30/17, at 4. The trial court was satisfied that Mother was truthful in her testimony. After a careful review of the record, we find no abuse of the trial court's discretion in its credibility determination, as it was within the trial court's province to determine which witnesses' testimony it found credible. *Appeal of: J.T.M.*, 845 A.2d at 863. While Adoptive Parents argue that the trial court abused its discretion in finding Mother's testimony that she properly revoked her consent to the adoption in a written letter sent to Attorney Bierly, they cannot request this Court to make a factual determination that reverses the fact-finding of the trial court that was based on competent testimony of record.

Next, the trial court addressed Adoptive Parents' challenges to the validity of Mother's revocation as follows:

B. Assertions of Error No's. [sic] 1, 2, 4, and 5

These assertions of error all challenge the court's conclusion that [Mother] validly revoked her consent in accordance with the Adoption Act, and challenge the sufficiency of the evidence to support that conclusion. At paragraph 2 of their concise statement, the [Adoptive Parents] assert the court erred by "failing to shift the burden to [Mother] after [Adoptive Parents] presented overwhelming evidence to rebut the presumption that [Mother] had mailed her revocation." (*See* Pet's. Concise Statem., at p. 2). In paragraph 5, [Adoptive Parents] assert that the court abused its discretion in finding that corroborating evidence was sufficient to support its finding that [Mother] mailed a written revocation of consent. (*Id.*).

As an initial point, the court did not base its conclusion that [Mother] mailed a written revocation to Attorney Bierly on a presumption; the conclusion was reached after considering the

testimony of the witnesses, including [Mother], and the evidence introduced at the hearing. [Mother] testified that she wrote a letter of revocation, signed it, and sent it to Attorney Bierly's office by United States mail. (Tr. 12-8-16 Hearing, at 28-32). She testified that she took these steps before expiration of the thirty[-]day revocation period, and that she was certain of the timing based on a confirming text message she sent to Attorney Bierly. (*Id.*). She testified that she had various follow-up communications in an attempt to further discuss the revocation she mailed to Attorney Bierly. (*Id.* at 25, 32, 48)[.] The court found [Mother's] testimony to be credible.

[Mother] also testified that she contacted Attorney Bierly's office before sending the written revocation and asked how to go about revoking her consent, informing Attorney Bierly she wanted to do so. She was advised to send a written revocation to Attorney Bierly, and that Attorney Bierly would advise the [Adoptive Parents'] counsel of her intent to revoke her consent to adoption. (*Id.* at 27-28, 171-72). [Mother] testified she believed Attorney Bierly had informed Attorney Miller, who in turn advised the [Adoptive Parents], of her intent to revoke; she testified that [Adoptive Father] called her and stated he was told she intended to revoke the consent to adoption. (*Id.* at 33-34). The court concluded that [Mother's] testimony on these matters was credible. Furthermore, the court notes that [Adoptive Parents] did not present any testimony to rebut the evidence that they had actual notice of [Mother's] intent to revoke her consent in the timeframe shortly before she sent the written revocation to Attorney Bierly.

The court also concluded that [Adoptive Parents'] evidence tended to corroborate the testimony of [Mother] that she had mailed a written revocation to Attorney Bierly. Specifically, the testimony from Ms. Calhoun established that [Mother] sent an email to Ms. Calhoun on March 4, 2016 stating that she sent her revocation letter in a week before, and that she had repeatedly tried to contact Attorney Bierly about it to no avail. The email also referenced a text message sent to Attorney Bierly advising her that the revocation letter had been sent. (Tr. 12-8-16 Hearing, at 58-59, and Resp. Exh. 1). Although Ms. Calhoun testified that the revocation letter sent by U.S. mail had not been received by Attorney Bierly's office, this testimony does not refute the testimony that the revocation letter was written, signed, and mailed. Similarly, Ms. Millinder's testimony about

the phone conversation with [Mother] on March 4, 2016 is not inconsistent with [Mother's] testimony about her actions. The court concluded that the evidence overall was corroborative of [Mother's] testimony that she timely mailed the revocation letter to Attorney Bierly; the court disagrees with [Adoptive Parents] that this conclusion constituted an error or abuse of discretion.

In addition to the above, portions of the evidence presented with respect to the issue of fraud and duress are also corroborative of [Mother's] testimony. In her testimony, Attorney Bierly acknowledged that she received [Mother's] text message stating that she already sent the revocation letter to Attorney Bierly. According to her testimony, Attorney Bierly received that text message on February 23, 2016, the day before the thirty[-]day period to revoke the consent to adoption expired. Attorney Bierly also testified that [Mother] told her in mid-February of her desire to revoke the consent to adoption, and that she informed [Mother] to send her the written revocation by mail and that she would notify the [Adoptive Parents'] attorney of [Mother's] plan to revoke. (*Id.* 161-62, 171-72). The court found this testimony to be consistent with [Mother's] testimony of the events, and with her testimony that she acted in accordance with instructions given to her on how to revoke the consent.

Petitioners also assert, in paragraphs 1 and 4 of their concise statement, that the court erred and abused its discretion in denying their petition to confirm consent, and determining that [Mother] properly revoked her consent to adoption "despite overwhelming evidence and testimony to the contrary." (*See* Pet's. Concise Statem., ¶¶ 2, 4). The evidentiary challenge seems to be the same issue raised by paragraphs 2, 3, and 5, addressed above. As to the more broadly phrased issue(s) in paragraphs 1 and 4 of [Adoptive Parents'] concise statement, the court assumes [Adoptive Parents] take issue with the manner in which [Mother] sent the revocation and in which they learned of it. In their memorandum submitted after the December 8, 2016 hearing, the [Adoptive Parents] argue that, assuming, arguendo, [Mother] actually mailed [Attorney] Bierly a written letter of revocation, [Mother] did not serve her written revocation on them in the manner required for service of original process under Pennsylvania Rule of Civil Procedure 403, and, therefore, she failed to comply with the statutory requirements for a valid revocation. (*See* Pet's. Memo., at pp. 2-3).

As a threshold matter, the court is not persuaded that the requirement in section 2711 of the Adoption Act that a revocation of consent be "served" was intended by the General Assembly to mean that the party effectuating such service would have to comply with the procedural rules pertaining to service of original process.  The procedural rules governing service of process apply to civil actions pending in the courts of common pleas.  *See* Pennsylvania Rules of Civil Proc., Intro. Cmt., ("Adoption of Rules of Civil Procedure.")  The rules governing service of original process are intended to ensure that the court has jurisdiction over a defendant in a civil action.  *See Trexler v. McDonald's Corp.*, 118 A.3d 408, 412 (Pa. Super. 2015).  Notably, nothing in the Adoption Act requires that a parent seeking to revoke a consent to adoption file an action with the court.  *See* 23 Pa.C.S.A. 2711(c)-(d).  Had the legislature intended to invoke all of the rules attendant to service of original process in civil actions, one would expect, at the very least, that the Adoption Act would include express language requiring a party seeking to revoke consent to adoption to commence a court action.  Given that no court action is required, the rules governing service of process over a defendant would have no application.

Moreover, section 2711(d)(1) sets forth mandatory language to be included in a consent to adoption, which also advises the consenting party how to go about revoking a consent to adoption within the permissible thirty[-]day window.  With respect to birth mothers, the statutorily prescribed language is as follows:

> If I am the birth mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written revocation to (insert the name and address of the agency coordinating the adoption) or (insert the name and address of an attorney who represents the individual relinquishing parental rights or prospective adoptive parent of the child) or (insert the court of the county in which the voluntary relinquishment form was or will be filed).

*Id.*  This mandatory language provides three acceptable sources to which a birth mother may deliver a written revocation.

- 21 -

The [c]ourt notes that section 2711(d)(1) also includes language that the consenting party understands that he or she "may revoke the consent . . . by placing the revocation in writing and serving it upon the agency or adult to whom the child was relinquished," (*id.*), and that the consent form is required to include that language as well. *See id.* Although this perhaps creates some degree of ambiguity, the express directive in the statutorily required language to birth mothers wishing to revoke is clear: the written revocation must be delivered to one of the three acceptable sources, which include the attorney for a birth mother relinquishing parental rights. *See id.*

In the case at bar, in accordance with the statutory mandate of section 2711(d)(1), the consent to adoption signed by [Mother] advised her as follows:

> E.     . . . If I am the BIRTH mother of the child, I understand that this consent to an adoption is irrevocable unless I revoke it within 30 days after executing it by delivering a written revocation to Denise M. Bierly, Esquire, 486 Nimitz Avenue, State College, PA 16801, or The Court of Common Pleas of Centre County, Pennsylvania Orphans' Court Division, Bellefonte, PA 16823[.]

This directive is consistent with the advice given to [Mother] by [Attorney] Bierly when [Mother] contacted her in mid-February stating she wanted to exercise her right to revoke her consent. (*See* Tr. 12-8-16 Hearing, at 161-62).

As discussed above, [Mother] testified that she wrote a revocation letter and mailed it to her attorney, [Attorney] Bierly, by sending it first class mail, and that she did so before the thirty[-]day revocation period expired. She then followed that with a text message to Attorney Bierly, sent the day before the end of the revocation period, stating that she had sent her the revocation. The court found this testimony to be credible and to be supported by the other credible evidence. Thus, [Mother] took every step required of her to revoke her consent to adoption, and she did so within the thirty[-]day time period for revoking. In addition, she alerted numerous individuals to the fact that she was doing so, and the record establishes that legal counsel for the [Adoptive Parents] was so advised, and that at

least [Adoptive Father] was actually aware of her intent to revoke.

Under the circumstances of this case, even assuming the mailed revocation letter was never received by Attorney Bierly, the court cannot conclude that the statutory requirements for revocation were not met. The court concludes that mailing the written revocation to Attorney Bierly was sufficient.

Trial Court Opinion, 1/30/17, at 10-14 (superfluous capitalization omitted).[2]

Thus, the trial court found that Mother properly revoked her consent to adoption in writing pursuant to section 2711(c) and (d) of the Adoption Act. Again, we agree with the trial court that Adoptive Parents' foregoing arguments depend upon credibility determinations made in the province of the trial court. After a careful review of the record, we find no abuse of the trial court's discretion in its credibility determination. *Appeal of: J.T.M.*, 845 A.2d at 863.

_____

[2] The trial court also stated that it found persuasive the argument raised by Mother's counsel that, even if the act of mailing the revocation would not be sufficient, absent receipt by of the written revocation letter by Attorney Bierly, the text message admittedly received by Attorney Bierly one day before expiration of the revocation period, stating that a written revocation had already been sent to her, would be sufficient for valid written revocation under the factual circumstances of this case. We agree with the trial court's reasoning to the extent that the text message, which Attorney Bierly did not deny receiving, should have alerted Attorney Bierly to the fact that she was missing Mother's letter from her delivered mail. With this finding, we need not rule on Adoptive Parents' assertion that the trial court inappropriately found Mother's text message to her counsel, itself, was the writing that conveyed her revocation.

Next, we review Adoptive Parents' challenge to the trial court's ruling that Mother did not produce a written revocation of consent at the hearing. The trial court set forth its analysis of this issue as follows:

C. Petitioners' Assertion of Error No. 6-8

In paragraphs 6 and 7 their concise statement, [Adoptive Parents] take issue with the fact that [Mother] did not produce a written revocation of consent at the hearing. In paragraph 8, [Adoptive Parents] assert that the court abused its discretion by failing to enforce the contract established by [Mother's] executed consent to adoption.

As set forth above, the court concluded, based on all of the evidence, that [Mother] did, in fact, send a written revocation letter to Attorney Bierly by U.S. mail before expiration of the thirty[-]day revocation period. [Adoptive Parents] challenged the veracity of that testimony, but did not object to [Mother's] testimony about the contents of the revocation letter at the hearing. The court found [Mother's] testimony and the other corroborating evidence discussed above to be credible evidence that a written revocation letter had been delivered as required. The court believes that these findings were well within the court's discretion, and do not constitute error of law or an abuse of discretion.

[Adoptive Parents'] assertion that the court failed to enforce the contract established by [Mother's] executed consent to adoption is novel, in that this was not an argument raised at the time of the hearing. The court concludes that this argument is without merit, in that the court concludes that [Mother] did follow the steps outlined in the consent to adoption document for revocation by birth mothers. As noted above, the court also finds that [Adoptive Parents] were aware, before expiration of the thirty days, that [Mother] intended to revoke her consent.

Trial Court Opinion, 1/30/17, at 14-15 (superfluous capitalization omitted).

Again, we agree with the trial court that Adoptive Parents' foregoing arguments depend upon credibility determinations made in the province of

- 24 -

the trial court. After a careful review of the record, we find no abuse of the trial court's discretion in its credibility determination. ***Appeal of: J.T.M.***, 845 A.2d at 863.

Finally, the trial court stated the reasoning for its decision as follows:

On a concluding note, although it is regrettable that [Mother's] revocation of consent to adoption was not addressed sooner by all involved, all parties were aware, prior to expiration of the thirty[-]day revocation period, that [Mother] intended to revoke her consent to adoption, and at least [Mother's] counsel was aware that she claimed to have done so. [Mother], at that point unrepresented by counsel and without the means to afford an attorney, appeared at the first opportunity to object at the hearing scheduled on the Adoptive Parents' petition to confirm consent.

This is not a case in which a birth mother delayed finality in the adoption process by belated attempts to revoke a consent to adoption. To the contrary, it is a case in which the birth mother took the very actions she was instructed to take to revoke her consent, and did so in a timely manner, but her actions were unacknowledged and, ultimately, ignored.

Trial Court Opinion, 1/30/17, at 15-16 (superfluous capitalization omitted).

We find that the trial court did not commit any legal error or abuse its discretion in denying Adoptive Parents' petition to confirm consent, finding credible Mother's testimony that she timely revoked her consent to adoption by mailing a written letter of revocation to her counsel, in conformance with Section 2711(c) and (d) of the Adoption Act. Accordingly, we affirm the trial court order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/7/2017